**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| TEXAS NATIONALIST MOVEMENT and DANIEL MILLER, individually and on behalf of all other similarly situated | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| META PLATFORMS, INC. | § § § | REMOVED FROM 58TH DISTRICT COURT OF JEFFERSON COUNTY |
| Defendant. | § § § | |

**NOTICE OF REMOVAL**

Defendant Meta Platforms, Inc. ("Meta") removes to the United States District Court for the Eastern District of Texas, Beaumont Division, the pending civil class action filed by the Texas Nationalist Movement and Daniel Miller ("Plaintiffs") as Cause No. A-210752, *Texas Nationalist Movement v. Meta Platforms, Inc.*, in the 58th District Court of Jefferson County, Texas. As grounds for removal, Meta states as follows:[1]

**I.     BACKGROUND AND PROCEDURAL HISTORY**

1. Plaintiff Texas Nationalist Movement is a Texas organization that seeks Texas' secession from the United States. *See* Meta Ex. 1, Amended Petition ("Am. Pet.") ¶¶15-16. Plaintiff Daniel Miller is the president of the Texas Nationalist Movement. *Id.* at Am. Pet. Ex. A.

2. Defendant Meta is the operator of a variety of online services and applications, including Facebook.

---

[1] By filing this Notice of Removal, Meta does not waive any rights or obligations under any contract or agreement by or between it and Plaintiffs, including (without limitation) rights or obligations related to forum selection. Nor does Meta consent to personal jurisdiction.

1

3. Plaintiffs have sued Meta in the 58th District Court for allegedly restricting Facebook postings involving the Texas Nationalist Movement. *Id.* at 1. According to Plaintiffs' amended petition, "when Facebook users attempted to post [a] link … to [the Texas Nationalist Movement's] homepage," "Meta prevented each and every user from sharing the link" because the link violated Facebook's "Community Standards." *Id.* ¶14 & Am. Pet. Ex. A.

4. Plaintiffs claim that this restriction imposes a "loss of First Amendment freedoms" and amounts to a "violation of Chapter 143A" of the Texas Civil Practice & Remedies Code ("TCPRC"), which prohibits certain types of viewpoint- and geography-based censorship of particular kinds of social-media postings. *Id.* ¶¶47, 53, 56 (quotation omitted); *see* TCPRC §§143A.001 *et seq.*

5. Plaintiffs seek several forms of relief on behalf of themselves and on behalf of a class of "all persons whom Meta censored for posting the [Texas Nationalist Movement] link." Meta Ex. 1 ¶27. They ask for a temporary restraining order, temporary injunction, permanent injunction, and declaratory judgment in order to protect their "First Amendment freedoms" and "their fundamental rights to the free exchange of ideas and information." *Id.* ¶¶53, 55-56. They request that the Court prohibit Meta's alleged censorship by "impos[ing] daily penalties on Meta for each day that it continues to censor Plaintiffs pursuant to [§]143A.006(c)." *Id.* ¶51. And they demand statutory attorney's fees. *Id.* ¶3.

6. Despite filing their initial petition on November 14, 2022, Plaintiffs never served it on Meta. *See* Meta Ex. 2, Initial Petition at 1. Instead, they waited two weeks to file an amended petition, which attempts to avoid federal jurisdiction by alleging (but not stipulating) that Plaintiffs will not seek attorney's fees above $75,000. *E.g.*, Am. Pet. 1 ¶¶5, 62. On December 5, 2022, Meta removed this case pursuant to Local Rule 81.

## II. REMOVAL IS PROPER BECAUSE THIS COURT HAS FEDERAL QUESTION JURISDICTION

7. This Court has federal question jurisdiction because Plaintiffs' "right to relief necessarily depends on resolution of a substantial question of federal law." *Bd. of Comm'rs of SE La. Flood Protection Auth. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 721 (5th Cir. 2017) (quotation omitted); *see also* 28 U.S.C. §1331 (granting federal district courts "original jurisdiction" over federal-question cases); *id.* §1441(a) (allowing removal of cases over which a district court has "original jurisdiction").

8. The Supreme Court has affirmed "the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons v. Darue*, 545 U.S. 308, 312 (2005). In light of that "commonsense notion," *id.*, state-law actions belong in federal court when "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Bd. of Comm'rs*, 850 F.3d at 721-22 (quotation omitted). This litigation readily satisfies that test.

9. <u>First</u>, Chapter 143A is structured so that Plaintiffs' affirmative cause of action requires the Court to resolve several federal questions. Here, Plaintiffs assert claims under §143A.007's "User Remedies" provision, which requires a social-media user to "prove[] that the social media platform *violated* this chapter with respect to the user." (Emphasis added.) Proving such a "violat[ion]" inherently requires a plaintiff to demonstrate—and the Court to resolve— threshold questions of federal law.

3

10. For example, a social-media platform does not "violate[]" Chapter 143A in the first place when it "censor[s] expression that [it] is specifically authorized to censor *by federal law*." §§143A.006(a)(1), .007 (emphasis added). Federal law, in turn, allows a social-media platform to remove any "material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." 47 U.S.C. §230(c)(2). Accordingly, for Plaintiffs to prove their affirmative case that Meta "violated" the law "with respect to the [Plaintiffs]," TCPRC §143A.007, they must satisfy their burden of showing that the postings in question could not be "consider[ed]" to fall within any of "objectionable" categories defined by *federal law*. 47 U.S.C. §230(c)(2).

11. This need to interpret, construe, and resolve federal issues presents a prototypical federal question. *See Grable*, 545 U.S. at 314-15 ("[plaintiff] has premised its [state-law] superior title claim on a failure by the IRS to give it adequate notice, *as defined by federal law*"); *Bd. of Comm'rs*, 850 F.3d at 722 ("a court would not be able to establish the magnitude of any potential [state-law] liability *without construing t[he federal] Act*"); *French v. EMC Mortg. Corp.*, 566 F. App'x 285, 287 (5th Cir. 2014) ("federal jurisdiction may exist over claims created by state law that *incorporate federal standards or require the interpretation of federal law*" (quotation omitted)); *Hughes v. Chevron Phillips Chem. Co.*, 478 F. App'x 167, 170 (5th Cir. 2012) ("[I]t would be impossible to determine whether the Defendants … breached their fiduciary duty to [plaintiff] or interfered with his contract without deciding whether their actions were governed by a valid administrative levy issued by the IRS. That question in turn requires determining whether the IRS had the authority to issue an administrative levy on [plaintiff's] unexempted wages, and whether it followed the proper procedures in doing so."); *Police Ass'n of New Orleans v. City of New Orleans*, 572 F. Supp. 3d 265, 275 (E.D. La. 2021) ("Resolution of a federal issue is

considered necessary if the vindication of a right under state law necessarily turns on *some construction of federal law*." (quotation omitted)).  (All emphases added.)

12. In addition to that key federal question, several other aspects of Plaintiffs' claims independently and affirmatively confirm the need to resolve federal questions:

- Plaintiffs' cause of action requires them to prove that the social-media postings are not "unlawful expression"—a phrase that §§143A.001(5) & .006(a)(4) explicitly define with reference to federal law.

- Plaintiffs must prove that Meta's conduct fell within Chapter 143A's scope (thus "violat[ing]" the law), yet Chapter 143A purports to apply "no further than the maximum extent permitted by … the *laws of the United States*" and purports to create no "legal remed[y] to the extent [a] social media platform is protected from th[e] remed[y] *under federal law*." *Id.* §§143A.004(d) & .005 (emphases added).  Accordingly, any effort by Plaintiffs to demonstrate a violation must also contend with the federal law—47 U.S.C. §230(c)(1)—that confers a "broad immunity" against claims involving "the structure and operation of [social media] website[s]," including "how [websites] treat postings," "rules about which terms are permitted or not permitted in a posting," and the "choice of what words or phrases can be displayed on the site." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 19-21 (1st Cir. 2016) (quotation omitted).[2]

- In a similar vein, Plaintiffs' obligation to plead and prove a "violat[ion]" of Chapter 143A requires them to show that any claim against Meta is consistent with Meta's rights under the Constitution (which too is a source of "federal law").

- Plaintiffs allege that they are entitled to relief—and emergency relief at that—because they have "los[t] First Amendment freedoms" and have been "depriv[ed] of their fundamental rights to the free exchange of ideas and information." Meta Ex. 1 ¶¶53, 55-56 (quotation omitted). Accordingly, "the vindication of [Plaintiff's] state-law rights … requires that a court construe federal First Amendment law and evaluate its scope." *Bracey v. Bd. of Educ. of City of Bridgeport*, 368 F.3d 108, 115-16 (2d Cir. 2004) (cleaned up); *see also Grable*, 545 U.S. at 320 n.7 ("constitutional questions may be the more likely ones to reach the level of substantiality that can justify federal jurisdiction").

---

[2] Indeed, Section 230 painstakingly sets out Congress' policy against "State regulation" of internet platforms and its policy in favor of the development of "blocking and filtering technologies."  47 U.S.C. §230(a)(4), (b)(2), (b)(4), (e)(3); *see also MySpace*, 528 F.3d at 418 (outlining Congress' policy goals); *Backpage.com*, 817 F.3d at 19 ("Congress sought to encourage websites to make efforts to screen content without fear of liability" (collecting cases)).

13. <u>Second</u>, these federal issues are in dispute because they are inherent to Plaintiffs' affirmative claims that Meta has violated the law and their free-speech rights. *See, e.g.*, *Bd. of Comm'rs*, 850 F.3d at 723 (stressing that the defendants disputed what "the [federal law] requires [of] them"); *Hughes*, 478 F. App'x at 171 (noting a dispute over the meaning of "terms … defined under federal law"); *Police Ass'n*, 572 F. Supp. 3d at 276 ("because Plaintiffs dispute the lawfulness of acts taken pursuant to federal law, the federal issue is actually disputed").

14. Plaintiffs underscore the importance and pervasiveness of these federal disputes by repeatedly referencing them throughout their petition. The amended petition alleges, for example:

- That Meta may remove posts that Meta "is specifically authorized to censor by federal law" or that constitute "unlawful expression" as defined by federal law. Meta Ex. 1 ¶18.

- That "there is no prohibition in the United State[s] Constitution" or "the United States Code … that forbids advocating for a legal referendum on Texas independence." *Id.* ¶19. *But see Texas v. White*, 74 U.S. 700, 724-26 (1868) ("It is needless to discuss, at length, the question whether the right of a State to withdraw from the Union … is consistent with the Constitution of the United States …. The Constitution, in all its provisions, looks to an indestructible Union, composed of indestructible States …. When, therefore, Texas became one of the United States, she entered into an ***indissoluble*** relation." (emphasis added)).

- That "[t]he Constitution of the United States" makes "no mention of States exiting the Union." Meta Ex. 1 ¶20. *But see White*, 74 U.S. at 726 ("Considered therefore as transactions under the Constitution, the ordinance of secession, adopted by the convention and ratified by a majority of the citizens of Texas, and all the acts of her legislature intended to give effect to that ordinance, were absolutely null.").

- That Plaintiffs' advocacy for secession does not violate a particular federal law that "prohibits advocating for 'overthrowing or destroying the government of the United States or the government of any State.'" Meta Ex. 1 ¶23 (quoting 18 U.S.C. §2385).

- That "there is nothing illegal or unconstitutional" about TNM's advocacy for secession. *Id.* ¶24.

6

- That Chapter 143A—which provides Plaintiff's cause of action—incorporates "the fundamental constitutional right to free speech." *Id.* ¶55.

- That Plaintiffs are entitled to coercive relief because they have "los[t their] First Amendment freedoms." *Id.* ¶¶53, 55-56 (quotation omitted).

15. <u>Third</u>, these federal issues are substantial. It almost goes without saying that any judicial interpretation of key language in Section 230 or judicial construction of the First Amendment is "importan[t] … to the federal system as a whole." *Bd. of Commr's*, 850 F.3d at 723 (quotation omitted).

16. Congress adopted Section 230 decades ago to create a comprehensive and robust scheme for regulating online activity. *E.g.*, §230(a)-(b) (outlining several Congressional "[f]indings" and "policy" goals); *Backpage.com*, 817 F.3d at 19 ("Congress sought to encourage websites to make efforts to screen content without fear of liability." (collecting cases)). Since then, federal courts have exhaustively and painstakingly interpreted Section 230 to create a robust body of federal law governing the liability of internet platforms. *See, e.g.*, *MySpace*, 528 F.3d at 418-19 (collecting federal cases and noting a "consensus among courts"); *Backpage.com*, 817 F.3d at 18-19 (collecting federal cases and describing the "near-universal agreement that [S]ection 230 should not be construed grudgingly").

17. Additionally, Plaintiffs' express claim that their "First Amendment freedoms" must be enforced "in the public square of social media" via this lawsuit raises serious questions about the scope of such Constitutional rights and their intersection with the competing First Amendment rights of social-media platforms. Meta Ex. 1 ¶¶53, 56 (quotation omitted). Such "constitutional questions may be the ***more likely ones*** to reach the level of substantiality that can justify federal jurisdiction." *Grable*, 545 U.S. at 320 n.7 (emphasis added).

18. Confirming that this litigation has sweeping federal implications, there are presently federal injunctions against Chapter 143A and against a similar Florida law that was recently enacted to govern social-media platforms. *NetChoice, LLC v. Paxton*, 573 F. Supp. 3d 1092, 1117 (W.D. Tex. 2021), *vacated and remanded*, 49 F.4th 439 (5th Cir. 2022); *NetChoice, LLC v. Atty. Gen., Fla.*, 34 F.4th 1196, 1210 (11th Cir. 2022). And could there be any doubt that these disputes raise important federal issues that belong in a federal forum, the Supreme Court has already vacated the Fifth Circuit's initial stay of the district court's preliminary injunction against Chapter 143A, *see NetChoice, LLC v. Paxton*, 142 S. Ct. 1715 (2022), with even the dissenting opinion stressing that the dispute "concerns issues of ***great importance that will plainly merit [the Supreme] Court's review***," *id.* at 1716 (ALITO, J., dissenting) (emphasis added). And the Fifth Circuit itself recently stayed its subsequent reversal of the Western District of Texas' injunction pending the second resolution of the matter at the Supreme Court. *See* Meta Ex. 5, Fifth Circuit Court of Appeals Order.

19. <u>Fourth</u>, and for similar reasons, federal jurisdiction would not "disturb the balance of federal and state judicial responsibilities." *Bd. of Comm'rs*, 850 F.3d at 721-22. Quite the contrary: Chapter 143A marks a novel state-law intrusion into the federally-dominated realm of internet regulation. *E.g.*, *NetChoice*, 142 S. Ct. at 1716 (ALITO, J., dissenting) ("At issue is a ground-breaking Texas law …. The law before us is novel."). As explained above, federal courts for decades have thoroughly and exhaustively addressed questions of platform liability under the auspices of Congress' statutory scheme. *See* Notice of Removal ¶16, *supra*. And federal courts are presently considering and debating the intersection of Chapter 143A (and similar social-media laws recently enacted by other States) with longstanding federal constitutional and statutory

8

provisions. *See id.* ¶18, *supra*. Given this pedigree, there is no doubt that "the normal currents of litigation" properly sweep this case into federal court. *Bd. of Comm'rs*, 850 F.3d at 725.

### III. REMOVAL IS PROPER BECAUSE THE COURT HAS JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT ("CAFA")

20. Independent from federal question jurisdiction, the Court also has diversity jurisdiction over this putative class-action suit that allegedly includes more than 100 class members. *See* Meta Ex. 1 ¶28 (identifying 185 individuals); 28 U.S.C. §§1332, 1453.

21. Under CAFA, diversity jurisdiction exists if (1) "any member of [the] class … is a citizen of a State different from any defendant," and (2) the "aggregated" value of "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." *Id.* §§1332(d)(2), (6); 1453. This case readily satisfies both requirements.

22. <u>First</u>, there is diversity of citizenship because at least one "member of [the] class … is a citizen of a State different from [the] defendant." 28 U.S.C. §1332(d)(2).

23. Plaintiff Daniel Miller "is an individual residing in Jefferson County, T[exas]." Meta Ex. 1 ¶7. He therefore is a Texas citizen for diversity purposes. *See Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974).

24. Plaintiff Texas Nationalist Movement "is an unincorporated Texas nonprofit association with its principal office located in Jefferson County, T[exas]." Meta Ex. 1 ¶6. CAFA thus "deem[s it] to be a citizen of the State" of Texas. 28 U.S.C. §1332(d)(10) (addressing "unincorporated association[s]").

25. Meta is incorporated in Delaware with its principal place of business in California. *See* Meta Ex. 1 ¶8; Meta Ex. 3, Declaration of Jennifer Pricer ¶¶2-3. Federal law thus treats it as a citizen of Delaware and California. *Id.* §1332(c)(1) ("a corporation shall be deemed to be a

9

citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business").

26.  Second, the amount in controversy is "likely to exceed" $5,000,000. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "[A]ttorney's fees" authorized by statute and "coercive penalt[ies]" count toward the amount-in-controversy threshold. *Id.*; *Buras v. Birmingham Fire Ins. Co. of Pa.*, 327 F.2d 238, 239 (5th Cir. 1964). And when a plaintiff seeks equitable relief to protect her or his rights, the Court must consider the potential value of that relief too. *See, e.g.*, *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977); *Puente de Reynosa, S.A. v. City of McAllen*, 357 F.2d 43, 47 (5th Cir. 1966); *Friedman v. Int'l Ass'n of Machinists*, 220 F.2d 808, 810 (D.C. Cir. 1955).

27.  Here, Plaintiffs request that the Court protect their free-speech rights by "impos[ing] daily penalties on Meta for each day that it continues to censor Plaintiffs pursuant to [§]143A.006(c) in an amount sufficient to secure compliance with the Court's order." Meta Ex. 1 ¶51. Those coercive penalties are steep: "[A]n initial daily fine of $10,000, which ***doubles every day*** that Meta continues to censor any of the Plaintiffs in violation of an order pursuant to Chapter 143A, *i.e.* $20,000, then $40,000, then $80,000, then $160,000, then $320,000, etc." *Id.* (emphasis added). In other words, just nine days of penalties would easily surpass $5,000,000.[3] On this basis alone, the amount in controversy requirement is met.

28.  Independently, the value of injunctive relief to a class of (at least) 185 individuals surpasses $5,000,000. The amended petition says as much: Plaintiffs allege an "immediate and irreparable injury" to their "First Amendment freedoms" and "rights to the free exchange of ideas and information in the public square of social media." Meta Ex. 1 ¶¶53, 56 (quotation omitted).

---

[3] $10,000 + $20,000 + $40,000 + $80,000 + $160,000 + $320,000 + $640,000 + $1,280,000 + $2,560,000 = $5,110,000.

And they attach an unambiguous monetary valuation to these rights by pleading that millions of dollars in penalties is necessary to secure them. *Id.* ¶51; *see, e.g.*, *Amon v. Cadec Design Sys., Inc.*, 253 F.3d 706 (5th Cir. 2001) ("This Court [has] held that the amount in controversy … [is] satisfied when the plaintiff s[eeks] reinstatement to his position paying more than [the amount in controversy]."); *Friedman*, 220 F.2d at 810 ("Absolute certainty of [the injunction's] value is not essential"); *Armendariz v. Hershey*, 295 F. Supp. 1351, 1352 (W.D. Tex. 1969) ("Although it is difficult to determine the pecuniary value of [a military-draft] deferment to the Plaintiff, it is not so difficult that it cannot be translated into terms of money." (quotation omitted)).

29.     Finally, Plaintiffs have requested attorney's fees. Meta Ex. 1 ¶3. Because Chapter 143A.007(b)(1) entitles the prevailing party to "costs and reasonable and necessary attorney's fees," under Fifth Circuit precedent "such fees are included as part of the amount in controversy." *Manguno*, 276 F.3d at 723.

30.     Although attorney's fees here are unnecessary to satisfy the amount-in-controversy requirement given the requested penalties and the value of the injunction, these fees will likely be substantial on their own terms—notwithstanding Plaintiffs' last-minute amendment that tries to disclaim a large fee award. Plaintiffs' counsel plans "to devote the vast majority of his time to this case"; this case involves a complex class action raising federal and state-law issues of first impression; and Meta plans to vigorously and exhaustively defend itself. Meta Ex. 1 ¶35. In fact, Plaintiffs' counsel has publicly explained that this suit is impact litigation with the goal of "shap[ing] this statute," and that he eventually hopes to "get to the Texas Supreme Court." *See* Paul Davis, *Uncancelled*, 57:27-40; 58:38-51 (Nov. 22, 2022) (interview with Plaintiff Daniel Miller), https://bit.ly/3u9qFyP; *cf. NetChoice*, 142 S. Ct. at 1716 (ALITO, J., dissenting) (this issue "will plainly merit [the Supreme] Court's review").

31. For the above reasons—independently or collectively—the amount in controversy exceeds $5,000,000.

## IV. REMOVAL IS PROPER BECAUSE THE COURT HAS JURISDICTION UNDER ORDINARY DIVERSITY PRINCIPLES

32. Alternatively, the Court has ordinary diversity jurisdiction because this suit "is between … citizens of different States" and "the matter in controversy exceeds the sum or value of $75,000." 28 U.S.C. §1332(a); *Manguno*, 276 F.3d at 723.

33. <u>First</u>, there is "complete diversity of citizenship of the named parties." *Manguno*, 276 F.3d at 723 (affirming jurisdiction over a class action).

34. As explained above, named Plaintiff Daniel Miller is a Texas citizen, and Defendant Meta is a citizen of California and Delaware. *See* Notice of Removal ¶¶23, 25, *supra*.

35. For non-CAFA diversity purposes, Plaintiff Texas Nationalist Movement "is considered to have the citizenship of its members" because it is a non-incorporated association. *Royal Ins. Co. of Am. v. Quinn-L Cap. Corp.*, 3 F.3d 877, 882 (5th Cir. 1993). But it still is a Texas citizen under this measure.

36. By its own definition (and as confirmed by its extensive marketing materials), the Texas Nationalist Movement is a movement for ***Texans*** who want ***Texas*** to secede from the Union. *See, e.g.*, Meta Ex. 6, Texas Nationalist Movement, *Home Page* (Dec. 2, 2022), https://bit.ly/3FoczAl ("Join 431,804 ***Texans*** who support our work to make Texas an independent nation again"); *id.* ("We are Texas Nationalists"); Meta Ex. 7, Texas Nationalist Movement, *Become A Member* (Dec. 2, 2022), https://bit.ly/3udmTEM ("We rely on our members to fund this movement …. We ***just*** have supporters like you who believe in Texas, who believe that the best people to govern Texas are Texans …."); Meta Ex. 8, Texas Nationalist Movement, *About* (Dec. 2, 2022), https://bit.ly/3OL9X2p ("Since our inception the Texas Nationalist Movement has

connected with hundreds of thousands *of Texans*" and "given a home to *all Texans* who believe that Texas would be better off as an independent nation"); Meta Ex. 9, Texas Nationalist Movement, *Local Groups* (Dec. 2, 2022), https://bit.ly/3XKnuLC (showing "local groups" within Texas); Meta Ex. 10, Texas Nationalist Movement, *TEXIT* (Dec. 2, 2022) ("*Texans*, it's time to TEXIT"), https://tnm.me/texit/.  (All emphases added).

37. Moreover, for diversity purposes, the actual "members" of the Texas Nationalist Movement are limited to individuals "who, *under the rules or practices of [the] nonprofit association*, may participate in the selection of persons authorized to manage the affairs of the nonprofit association or in the development of policy of the nonprofit association." Tex. Bus. Org. Code §252.001(1) (emphasis added); *see Royal*, 3 F.3d at 882 ("Normally, we should examine an entity's definition of 'member.'  Here, such an inquiry is unnecessary, as the relationship of the [relevant parties] is described by statute.").  In this case, it is probable that, as a matter of the organization's internal governance (and of Texas law), the Texas Nationalist Movement limits true "membership" to a select few individuals—which indeed would be unsurprising for an organization that devotes itself to Texas-specific causes.  In fact, the "Membership" tab of the Texas Nationalist Movement's website appears to list only a handful of individuals.  *See* Meta Ex. 11, Texas Nationalist Movement, *Meet The TNM: Membership* (Dec. 2, 2022), https://bit.ly/3AWzC2p.

38. All of this is more than sufficient to establish the Texas citizenship of the Texas Nationalist Movement.  *See Hise Real Estate Invs. LP v. Great Lakes Ins. SE*, 2021 WL 217264, at *2 (E.D. Tex. Jan. 21, 2021) ("the Fifth Circuit approved removal where defendants 'asserted on information and belief' that all 308 plaintiffs were citizens of Texas and where the plaintiffs 'failed to demonstrate that this was incorrect'" (quoting *Volentine v. Bechtel, Inc.*, 209 F.3d 719

(5th Cir. 2000)) (collecting cases); *see also id.* at *2-3 (stressing that allegations of citizenship on "information and belief" are sufficient when "Plaintiffs exclusively possess the complete knowledge regarding their own citizenships" (quotation omitted and collecting cases)).

39. <u>Second</u>, at least one named Plaintiff has more than $75,000 in controversy. That is true notwithstanding Plaintiff Daniel Miller and his attorney's public suggestions that they may "change up [their retention] agreement" to circumvent this obvious basis for removal—perhaps by stipulating that Plaintiffs "will only pay [counsel] in Kohl's Cash," "Bath and Body Works coupon[s]," and "Bed Bath and Beyond coupons." *See* Paul Davis, *Uncancelled*, *supra*, at 43:52-44:05; 44:34-42; 53:40-55.

40. As explained above, "coercive penalt[ies]" and the value of injunctive relief count toward the amount controversy, and the named Plaintiffs here have clearly valued their purported "First Amendment freedoms" in excess of $75,000. *Buras*, 327 F.2d at 239; *Armendariz*, 295 F. Supp. at 1353; *see* Notice of Removal ¶¶26-28, *supra* (discussing the significant penalties sought).

41. Moreover—and independently—equitable relief has undeniable and significant financial implications for both named Plaintiffs. *See, e.g.*, *Hunt*, 432 U.S. at 347; *Puente de Reynosa*, 357 F.2d at 47.

42. Plaintiff Texas Nationalist Movement "***rel[ies] on [its] members to fund th[e] [M]ovement***." *See* Meta Ex. 7, https://bit.ly/3udmTEM (emphasis added). These funding options involve membership subscriptions of up to $500 through Plaintiff's website. *See id.* And as of December 2, 2022, the Texas Nationalist Movement ostensibly has acquired well over 400,000 supporters. *See* Meta Exs. 6 & 10, https://bit.ly/3FoczAl & https://tnm.me/texit/.

43. According to Plaintiffs' allegations, Meta has seriously impaired this funding source by categorically blocking Facebook users from posting a link to the Texas Nationalist

14

Movement's online materials, *e.g.*, Meta Ex. 1 ¶2—a link that immediately solicits visitors to donate $100.  *See* Meta Ex. 10, *TEXITnow.org*.  By operation of simple math, this alleged "probabilit[y]" of loss of revenue "is readily translatable into an amount exceeding [$75,000]." *Friedman*, 220 F.2d at 810 (considering the value of injunctive relief over the next "30 years"); *see also Hunt*, 432 U.S. at 347-48 ("Obviously, those lost sales could lead to diminished profits …. The competitive advantages thus lost could not be regained without incurring additional costs in the form of advertising, etc.").

44. Plaintiff Texas Nationalist Movement also operates a store through its website, selling a wide variety of merchandise that costs up to several hundred dollars.  *E.g.*, Meta Exs. 12-13, Texas Nationalist Movement, *Welcome to the TNM Store!* (Dec. 2, 2022), https://bit.ly/3OQHF6L & https://bit.ly/3EOhBo5.

45. Plaintiff Daniel Miller similarly has a direct financial stake in this matter.  He has built a commercial empire on the back of Texas secession—including a "BESTSELLING Book" on secession that is priced between $25 to $50, and a variety of similarly themed and priced merchandise ranging from coffee mugs to apparel.  *See* Meta Exs. 14-15, Daniel Miller, *Home Page* (Dec. 2, 2022), https://bit.ly/3FdSg8o; Daniel Miller, *TEXIT: Why and How Texas Will Leave the Union* (Dec. 2, 2022); https://bit.ly/3Fa4UEr; Daniel Miller, *Online Store* (Dec. 2, 2022), https://bit.ly/3uac7iu.

V. **META HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL**

46. Removal of this action is timely because Meta has not yet been served.  *See Pisharodi v. Wells Fargo Bank, N.A.*, 2022 WL 1005311, at *4 n.5 (S.D. Tex. Feb. 25, 2022) ("The Fifth Circuit has affirmed the right of state court defendants to remove a case prior to being served.").

47. Meta has provided the information required by Local Rule 81 and 28 U.S.C. §1446(d) through the filing of this Notice of Removal.

    a. Meta has filed with the Clerk a notice of removal which reflects the style of the case exactly as it was styled in state court;

    b. At the time of filing this Notice of Removal, only Plaintiffs have requested a jury trial;

    c. Meta furnishes the following information to the Clerk:

        i. Parties (all pending):

            1. Plaintiffs: Texas Nationalist Movement and Daniel Miller, individually and on behalf of all others similarly situated.

            2. Defendant: Meta Platforms, Inc.

        ii. The attached civil cover sheet and certified copy of the state court docket sheet, *see* Meta Ex. 4, and a copy of all pleadings that assert causes of action, *see* Meta Exs. 1 & 2.  Defendants have not yet answered or been served.

        iii. Involved attorneys:

            1. For all Plaintiffs:

                a. Paul Davis
                    i. Bar No. 24078401
                    ii. 9355 John W. Elliott Dr. Suite 25454, Frisco, TX 75033
                    iii. 945-348-788
                    iv. paul@fireduptxlawyer.com

            2. For Defendant:

                a. J. Thad Heartfield
                    i. Bar No. 09346800
                    ii. 2195 Dowlen Road, Beaumont, TX 77706
                    iii. 409-866-3318
                    iv. thad@heartfieldlawfirm.com

                b. M. Dru Montgomery
                    i. Bar No. 24010800
                    ii. 2195 Dowlen Road, Beaumont, TX 77706

                        iii. 409-866-3318
                        iv. dru@heartfieldlawfirm.com

            c. Taj J. Clayton, P.C.
                  i. Bar No. 24050427
                  ii. 4550 Travis Street, Dallas, TX 75205
                  iii. 214-972-1757
                  iv. taj.clayton@kirkland.com

    iv. As reflected in their petition, only Plaintiffs have requested a jury trial. *See* Meta Ex. 1.

    v. The address of the 58th District Court is 1149 Pearl St., Beaumont, TX 77701.

48.    Meta attaches a true and correct copy of all process, pleadings, and orders on file in the state court action, as well as other cited documents, as the following exhibits:

Exhibit 1:    Plaintiffs' Amended Petition and Application for a Temporary Restraining Order, filed November 28, 2022;

Exhibit 2:    Plaintiffs' Initial Petition, filed November 14, 2022;

Exhibit 3:    Declaration of Jennifer Pricer;

Exhibit 4:    Jefferson County Docket Sheet, Certification, and case file;

Exhibit 5:    Fifth Circuit Court of Appeals Order, dated October 12, 2022;

Exhibit 6:    TNM Home Page (Dec. 2, 2022);

Exhibit 7:    TNM Become a Member Page (Dec. 2, 2022);

Exhibit 8:    TNM About Page (Dec. 2, 2022);

Exhibit 9:    TNM Local Groups Page (Dec. 2, 2022);

Exhibit 10:    TNM TEXIT Page (Dec. 2, 2022);

Exhibit 11:    TNM Membership Team Page (Dec. 2, 2022);

Exhibit 12:    Welcome to the TNM Store Page (Dec. 2, 2022);

Exhibit 13:    TNM Merchandise Page (Dec. 2, 2022);

Exhibit 14:    Daniel Miller Home Page (Dec. 2, 2022);

        Exhibit 15:    Daniel Miller Store Page (Dec. 2, 2022);

## VI. CONCLUSION

Meta respectfully removes this action from the District Court of Jefferson County, Texas, to the Beaumont Division of the United States District Court for the Eastern District of Texas. Meta submits this Notice of Removal without waiving any defenses to the claims asserted by Plaintiffs, including those based on choice-of-forum; without waiving any objections, including those involving personal jurisdiction; without conceding that Plaintiffs have pleaded claims upon which relief can be granted, and without admitting that Plaintiffs are entitled to any relief whatsoever.

Dated: December 5, 2022                           Respectfully submitted,

                                                        */s/ J. Thad Heartfield*_____

                                                        **THE HEARTFIELD LAW FIRM**
                                                        J. Thad Heartfield
                                                        State Bar No. 09346800
                                                        thad@heartfieldlawfirm.com
                                                        M. Dru Montgomery
                                                        State Bar No. 24010800
                                                        dru@heartfieldlawfirm.com
                                                        2195 Dowlen Road Beaumont, TX 77706
                                                        Telephone: 409-866-3318
                                                        Facsimile: 409-866-5789

                                                        **KIRKLAND & ELLIS LLP**
                                                        Taj J. Clayton, P.C.
                                                        taj.clayton@kirkland.com
                                                        State Bar No. 24050427
                                                        4550 Travis Street
                                                        Dallas, Texas 75205
                                                        Telephone: 214-972-1757
                                                        Facsimile: 214-972-1771

                                                        *Attorneys for Meta Platforms, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that on the 5th day of December 2022, a true and correct copy of the foregoing document was served on Plaintiffs via e-service and via email.

PAUL M. DAVIS & ASSOCIATES, P.C.
Paul Davis
Texas Bar No. 24078401
9355 John W. Elliott Dr.
Suite 25454
Frisco, TX 75033
Telephone: 945.348.7884
Email: paul@fireduptxlawyer.com
***Via E-Service***

                              */s/ J. Thad Heartfield*
                              J. Thad Heartfield