## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

TEXAS NATIONALIST MOVEMENT and
DANIEL MILLER, individually and on behalf
of all other similarly situated

               Plaintiffs,

v.

META PLATFORMS, INC.

               Defendant.

Civil Action No. 1:22-cv-572

Removed from 58th District Court
of Jefferson County

## BRIEF FOR THE STATE OF TEXAS AS AMICUS CURIAE IN SUPPORT OF NEITHER PARTY

**TABLE OF CONTENTS**

Page

Table of Authorities ...................................................................................................... i

Introduction and Interest of Amicus ....................................................................... 1

Background ................................................................................................................ 3

    A.  HB 20 ............................................................................................................ 3

    B.  Factual and Procedural Background ...................................................... 5

Argument ................................................................................................................... 5

    I.  The Court Likely Lacks Jurisdiction.............................................................. 5

        A.  This case does not give rise to federal question jurisdiction. ................... 6

        B.  The amount in controversy requirement is likely not satisfied for diversity or CAFA jurisdiction ................................................................... 9

    II.  Enforcement of Facebook's Forum Selection Clause Would be Unreasonable Here. ................................................................................................................. 9

        A.  Enforcement of the forum selection clause would be unreasonable because it conflicts with conflicts with HB 20's codification of strong public policy ................................................................................................ 10

        B.  Transfer to California would be unreasonable because it may have the effect of denying Plaintiffs their day in court ......................................... 12

Conclusion ............................................................................................................... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases:**

*Barnett v DynCorp Int'l,*
    831 F.3d 296 (5th Cir. 2016) ........................................................................... 10, 12

*Bd. of Comm'rs of SE La. Flood Prot. Auth. v. Tenn. Gas Pipeline Co.,*
    850 F.3d 714 (5th Cir. 2017) ................................................................................ 7

*Bd. of Regents v. Southworth,*
    529 U.S. 217 (2000) ............................................................................................. 13

*Bradford Elec. Light Co. v. Clapper,*
    286 U.S. 145 (1932) ........................................................................................... 3, 12

*Burns v. Windsor Ins. Co.,*
    31 F.3d 1092 (5th Cir. 1994) ................................................................................. 9

*California. Hughes v. Bd. of Architectural Exam'rs,*
    17 Cal. 4th 763 (1998) ................................................................ 14

*Caterpillar Inc. v. Williams,*
    482 U.S. 386 (1987) ............................................................... 6, 8

*Christianson v. Colt Industries Operating Corp.,*
    486 U.S. 800 (1988) .................................................................. 7

*Chuska Energy Co. v. Mobil Expl. & Producing N. Am., Inc.,*
    854 F.2d 727 (5th Cir. 1988) ...................................................... 6

*Davis v. Oasis Legal Fin. Operating Co.,*
    936 F.3d 1174 (11th Cir. 2019) ................................................ 10

*DePuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.,*
    28 F.4th 956 (9th Cir. 2022) ................................................... 10

*Empire Healthchoice Assurance Inc. v. McVeigh,*
    547 U.S. 677 (2006) ............................................................... 2, 6

*Franchise Tax Bd. of Cal. v. Hyatt,*
    538 U.S. 488 (2003) ................................................................ 12

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.,*
    463 U.S. 1 (1983) .................................................................. 2, 8

*Greathouse v. Charter Nat'l Bank-Sw.,*
    851 S.W.2d 173 (Tex. 1992) ...................................................... 8

*Gully v. First Nat'l Bank,*
    299 U.S. 109 (1936) .................................................................. 8

*Howery v. Allstate Ins. Co.,*
    243 F.3d 912 (5th Cir. 2001) ...................................................... 7

*Jones v. GNC Franchising, Inc.,*
    211 F.3d 495 (9th Cir. 2000) .................................................... 10

*Lakeside Surfaces, Inc. v. Cambria Co.,*
    16 F.4th 209 (6th Cir. 2021) ................................................... 10

*In re Lyon Fin. Servs., Inc.,*
    257 S.W.3d 228 (Tex. 2008) (per curiam) (orig. proceeding) ............ 10

*M/S Bremen v. Zapata Off-Shore Co.,*
    407 U.S. 1 (1972) ................................................................ 2, 10

*McDonal v. Abbott Lab'ys,*
    408 F.3d 177 (5th Cir. 2005) ...................................................... 6

*McDonald v. Lawson,*
    2022 WL 18145254 (C.D. Cal. Dec. 28, 2022) ............................. 13

*NetChoice v. Paxton,*
    49 F.4th 439 (5th Cir. 2022) .............................................. 1, 4, 8

*NetChoice v. Paxton,*
    573 F. Supp. 3d 1092 (W.D. Tex. 2021) ...................................... 4

*Nken v. Holder,*
    556 U.S. 418 (2009) .................................................................. 4

*Sangha v. Navig8 Ship Management Priv. Ltd.*,
  882 F.3d 96 (5th Cir. 2018) ........................................................... 6
*Scarlott v. Nissan N. Am.*,
  771 F.3d 883 (5th Cir. 2014) ........................................................ 9
*Whitaker v. Monroe Staffing Servs.*,
  42 F.4th 200 (4th Cir. 2022) ....................................................... 6

**Statutes:**

28 U.S.C.:
  § 1332(a) ........................................................................................ 9
  § 1332(d) ........................................................................................ 9
  § 1447(c) ........................................................................................ 5
47 U.S.C. § 230 ..................................................................................... 8
Cal. Bus. & Prof. Code:
  § 2234 ........................................................................................... 13
  § 2270(a) ..................................................................................... 13
  § 2270(b) ..................................................................................... 13
  § 22677(a)(3) .............................................................................. 12
Tex. Bus. & Com. Code:
  § 120.104 ....................................................................................... 9
  § 120.001(1) ................................................................................. 3
  § 120.002(b) ................................................................................. 3
Tex. Civ. Prac. & Rem. Code:
  § 143A.001(4) ............................................................................. 3
  § 143A.001(5) ............................................................................. 4
  § 143A.002 .................................................................................. 4
  § 143A.003 .................................................................................. 2
  § 143A.003(a) ..................................................................... 1, 10, 11
  § 143A.003(b) ..................................................................... 1, 10, 11
  § 143A.004(c) ............................................................................. 3
  § 143A.006(a) ............................................................................. 5
  § 143A.006(a)(3) ....................................................................... 4
  § 143A.007(a) ............................................................................. 4
  § 143A.007(b) ............................................................................. 4
  § 143A.007(c) ............................................................................. 4
  § 171.001(a) .............................................................................. 11
Act of Sept. 2, 2021, 87th Leg., 2d C.S., ch. 3, § 1, 2021 Tex. Gen. Laws 3904
  ("HB 20") ............................................................................... 1, 3

**Other Authorities:**

Appellees' Br., *NetChoice v. Paxton*, 49 F.4th 439 (2022) (No. 21-51178),
  2022 WL 1046833 at *8 .............................................................. 13
Press Release, East Cnty. Today (Jun. 22, 2022), https://perma.cc/8AV8-XARR ............. 12

Senate Judiciary Comm., Bill Analysis, Cal. AB 587 at 11, 2021-22 Reg. Sess. (June 25, 2022) ................................................................................................ 12

Steven Lee Myers, *Is Spreading Medical Misinformation a Doctor's Free Speech Right?* N.Y. Times (Nov. 30, 2022) ....................................................................... 14

## Introduction and Interest of Amicus

This case is one of the first citizen-suits under Texas's House Bill 20. Act of Sept. 2, 2021, 87th Leg., 2d C.S., ch. 3, § 1, 2021 Tex. Gen. Laws 3904 ("HB 20"). HB 20 is a landmark piece of State legislation designed to prevent large social media companies from dictating which viewpoints are appropriate in their digital forums. It advances Texas's "fundamental interest in protecting the free exchange of ideas and information" by providing redress to persons who have been denied online service on account of their viewpoint. *Id.* § 1(2). It reflects "public-policy" of the "highest importance and interest to this state." Tex. Civ. Prac. & Rem. Code § 143A.003(b). And the law underscores this importance by nullifying social media platforms' attempts to induce consumers to waive its protections. *Id.* § 143A.003(a).

Texas takes no view on the merits of this suit or Plaintiffs' underlying speech. It is instead submitting this amicus brief to ensure that defendant Meta Platforms, Inc. (Facebook) does not undermine HB 20's protections. Facebook is a member of an association that lost a recent First Amendment challenge to HB 20. *NetChoice v. Paxton*, 49 F.4th 439 (5th Cir. 2022). Texas is confident that if the Supreme Court reviews that case, it will affirm. But Facebook here advances procedurally-dressed arguments that appear designed to accomplish the same substantive aims that Facebook's associational representative failed to achieve in *NetChoice*—undermining HB 20 as a whole. Specifically, Facebook's removal and transfer arguments could result in California federal courts hearing *every* private HB 20 case. And it is plausible—arguably likely—that those courts would refuse or water-down HB 20 enforcement on the grounds that it conflicts with California public policy. This Court should reject that unreasonable result.

First, Facebook likely had no basis to remove this suit to federal court. There is definitively no federal question jurisdiction because Plaintiffs' suit arises under HB 20—a state-law cause of

action. Only in a "special and small category" of state law claims does federal question jurisdiction arise, *Empire Healthchoice Assurance Inc. v. McVeigh*, 547 U.S. 677, 699 (2006), and HB 20 is not one of them. Facebook's contrary arguments are in the nature that that they have federal *defenses* to HB 20 liability. But "a case may not be removed to federal court on the basis of a federal defense." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 14 (1983). Texas does not take a position on whether Facebook's diversity and Class Action Fairness Act (CAFA) theories of federal jurisdiction work on account of factual particulars in this specific case but notes that Facebook's theory of how the amount in controversy is satisfied rests on heavy speculation.

Second, Facebook is wrong that the forum selection clause in its Terms of Service forces this novel Texas cause of action, brought by Texas plaintiffs, in Texas state court, to be transferred to *California*. HB 20's drafters expressly foresaw, and foreclosed, social media platforms' procedural attempts to escape full enforcement. Tex. Civ. Prac. & Rem. Code § 143A.003 (limitations on HB 20 are "void as unlawful and against public policy . . . notwithstanding any contract or choice-of-law provision"). In addition, courts do not enforce forum selection clauses when doing so would be "unreasonable." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). And unreasonableness is present here in spades. California—as expressed through multiple recent, high-profile enactments—has propounded policy goals at loggerheads with HB 20. Among other things, California penalizes certain viewpoints that contradict state edicts (California designates this speech "misinformation"). *See infra* at 13. HB 20, by contrast, is designed to *protect* dissenting viewpoints. If this case is transferred, Facebook will presumably ask its new California forum to apply California law. *See* Mot. to Transfer at 4, Dkt. 7 (Facebook's current Terms of Service provide that "laws of the State of California will govern" all claims "without regard to conflict of law provisions").

And, in light of California public policy, there is a significant possibility that a California court applying California law would refuse or water-down HB 20's enforcement. *See Bradford Elec. Light Co. v. Clapper*, 286 U.S. 145, 160 (1932) (States may deny enforcement of sister-state laws if "enforcement of the right conferred would be obnoxious to the public policy of the forum").

**BACKGROUND**

## A.  HB 20

Texas passed HB 20 after numerous examples came to light where Facebook and other large social media platforms were shown to discriminate against users based on their users' viewpoints.  Texas determined that this behavior rose to the level that it implicated the State's "fundamental interest in protecting the free exchange of ideas and information" within its borders. Act of Sept. 2, 2021, 87th Leg., 2d C.S., ch. 3, § 1(2). HB 20 is designed to ensure, among other things, that these large social media platforms provide undifferentiated service to the public without discriminating based on viewpoint.

As relevant here, HB 20 narrowly applies to only "social media platform[s]" with 50 million or more monthly users in the United States. Tex. Bus. & Com. Code § 120.002(b); Tex. Civ. Prac & Rem. Code § 143A.004(c). A "social media platform" is an Internet website or application that is "open to the public" and primarily facilitates users sharing information with each other. Tex. Civ. Prac & Rem. Code § 143A.001(4); Tex. Bus. & Com. Code § 120.001(1). It is a factual question which social media platforms HB 20 currently applies to, but the Attorney General's best assessment (based in part on social media company representations in the *NetChoice* litigation) is that it presently reaches only Facebook, YouTube, and Twitter.[1]

---

[1] As noted *supra* at 1, the Fifth Circuit in the *NetChoice* litigation ruled for the Attorney General and against Facebook's associational representative. That ruling reversed a preliminary injunction

HB 20 prohibits covered platforms from censoring or denying service to a customer based on his viewpoint. Tex. Civ. Prac. & Rem. Code § 143A.002. An HB 20 plaintiff states a claim under HB 20 if he asserts that he was censored "based on" his "viewpoint" or the "viewpoint represented in [his] expression." *Id.* §§ 143A.002; 143A.007(a). An HB 20 plaintiff may seek "declaratory relief," "injunctive relief," and "costs and reasonable and necessary attorney's fees." *Id.* § 143A.007(b). Damages are not available. In addition, HB 20 codifies a contempt procedure: "If a social media platform fails to promptly comply with a court order," a court "shall use lawful measures to secure immediate compliance," including potentially "daily penalties." *Id.* § 143A.007(c).

HB 20 also provides covered platforms with multiple defenses to liability. Among other things, a social media platform cannot be held liable for removing content falling within any number of statutory exclusions. For example, covered platforms can remove content that incites violence. *Id.* 143A.006(a)(3). They may also remove any content when "specifically authorized" by federal law, content that is unlawful or tortious, content concerning the sexual exploitation of children or the harassment of sexual abuse survivors, or content inciting criminal activity. *Id.* §§ 143A.001(5), 143A.006(a).

---

against the Attorney General's enforcement of HB 20. The Attorney General has consented to a stay of the Fifth Circuit's mandate while proceedings before the Supreme Court are pending and so he remains enjoined from "enforcing" HB 20. *NetChoice v. Paxton*, 573 F. Supp. 3d 1092, 1117 (W.D. Tex. 2021). The *law*, however, is not enjoined. *Contra* Mot. to Transfer at 5. Courts do not enjoin laws. *Nken v. Holder*, 556 U.S. 418, 428 (2009) (injunctions operate "*in personam*").

## B.   Factual and Procedural Background

Plaintiffs filed their operative complaint in state court on November 28, 2022. That complaint states one cause of action—violation of HB 20. Dkt. 1-2, ¶¶ 39-48. Specifically, Plaintiffs seek declaratory and injunctive relief against Facebook for allegedly censoring Plaintiffs' content in violation of HB 20's viewpoint discrimination prohibition. *Id.* ¶ 48. Plaintiffs have proposed to certify a class of 185 similarly affected individuals. *Id.* ¶ 28.

Plaintiffs have also offered their assessment of what the Court should do if Facebook is enjoined but violates an injunction's terms. Specifically, under HB 20's contempt procedure, Plaintiffs propose daily penalties that would double every day that Facebook violates an injunction. *Id.* ¶ 51. Plaintiffs also seek attorney's fees and represent that those fees will not exceed $75,000. *Id.* ¶ 62.

On December 5, 2022, Facebook removed the case to this Court. Dkt.1. Four days later, Facebook filed a motion to transfer to the Northern District of California. Dkt. 7. On December 16, this Court ordered Plaintiffs to respond to the motion to transfer by January 13, 2023. Dkt. 10. The State is submitting this amicus brief on the same day in order to minimize disruption to the Court's consideration of the case.

## Argument

## I.   The Court Likely Lacks Jurisdiction.

Facebook claims that this Court has subject-matter jurisdiction under three theories: (1) federal question; (2) CAFA, or (3) diversity. The State submits that there is definitively no federal question jurisdiction, and likely no CAFA or diversity jurisdiction. If this Court agrees, it must remand to state court (regardless of whether Plaintiffs move for such relief). 28 U.S.C. § 1447(c)

(court must remand if it lacks subject-matter jurisdiction); *McDonal v. Abbott Lab'ys*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) (court has independent obligation to police whether removal is proper).[2]

### A. This case does not give rise to federal question jurisdiction.

Facebook's first asserted basis for removal is federal question jurisdiction. Notice of Removal ¶¶ 7-19, Dkt. 1. That fails.

There appears to be no dispute that Plaintiffs have pled a cause of action under only state law (HB 20). That means this case presumptively belongs in state court, and that, for federal question jurisdiction to exist, Facebook would have to establish that this case fits into a "special and small category" of State-created actions. *McVeigh*, 547 U.S. at 699. That is not an easy showing to make. It is not enough, for example, that a state action will force federal issues to be litigated—"[s]tate courts are routinely required to adjudicate suits in which there are related issues requiring the construction of federal statutes and the Constitution." *Chuska Energy Co. v. Mobil Expl. & Producing N. Am., Inc.*, 854 F.2d 727, 730 (5th Cir. 1988). It is also not enough that Plaintiffs will inevitably have to overcome a federal *defense*—"a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987).

---

[2] Facebook relies in its transfer motion (at 5-6) on a district court opinion for the proposition that this Court should transfer without deciding whether it has subject-matter jurisdiction. At a bare minimum, it is wrong to say the Court *should* do that. *See, e.g.*, *Sangha v. Navig8 Ship Management Priv. Ltd.*, 882 F.3d 96, 100 (5th Cir. 2018) (even though they have some discretion to sequence other threshold issues first, in the "mine run of cases" district courts should first confirm subject-matter jurisdiction). And there is significant doubt whether it even *could*. *See, e.g.*, *Whitaker v. Monroe Staffing Servs.*, 42 F.4th 200, 208 (4th Cir. 2022) ("[T]he district court should have assured itself of jurisdiction before interpreting and applying the forum selection clause.").

Facebook contends that this case fits in the "special and small category" because "resolving a federal issue is *necessary* to resolution of the" HB 20 claim. Notice of Removal at 3 (emphasis added) (citing *Bd. of Comm'rs of SE La. Flood Prot. Auth. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 721 (5th Cir. 2017)). It is true that sometimes a state action will give rise to federal question jurisdiction if "resolving a federal issue is necessary" (and if other requirements are met). But Facebook misapplies this standard. The "necessary" inquiry asks whether to a plaintiff *must* prove up a federal element as part of his *affirmative case. See Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 808-09 (1988) (federal law must be "necessary element of one of [plaintiff's] well-pleaded claims"). This is rare, but it does happen. Facebook's lead authority—*Board of Commissioners*—is illustrative. There, negligence and nuisance claims depended on a showing that the defendant violated *federal* regulations (there was an "absence of any state law grounding for the" negligence and nuisance theories). 850 F.3d at 722-23. Under HB 20, by contrast, a plaintiff can prevail on a claim without reference to any federal law—he must merely establish that he was discriminated against based on viewpoint. "[N]o federal right is an *element* of [Plaintiffs'] claim," and so no federal question jurisdiction exists. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 918 (5th Cir. 2001) (emphasis added).

Facebook's contentions that the Court must resolve federal issues as part of Plaintiffs' affirmative case (*see, e.g.*, Notice of Removal ¶ 9) rest on obvious misconstructions of HB 20. All of the federal issues that Facebook identifies are *defenses*. For example, it is true that Facebook cannot be held liable under HB 20 if the content at issue was something Facebook was "specifically authorized to censor by federal law." *Id.* ¶ 10. But it is also irrelevant, because HB 20's recognition of this defense is just a restatement of ordinary preemption principles, and it is well-established that

preemption is a defense that does not create federal question jurisdiction. *E.g.*, *Caterpillar*, 482 U.S. at 393.[3] Facebook runs into the same problem with the other federal issues it identifies—*i.e.*, whether Plaintiffs' content was "unlawful" under federal law, or whether liability would somehow violate Facebook's First Amendment rights. *Id.* ¶ 14. These are just federal defenses, and the fact that HB 20 recognizes their availability as such does not give rise to federal question jurisdiction. *Franchise Tax Bd.*, 463 U.S. at 12 ("[A] suit brought upon a state statute does not arise under [federal law] because prohibited thereby."). *Gully v. First Nat'l Bank*, 299 U.S. 109, 115 (1936) (no federal question jurisdiction where existence of federal authorization for state law action was indisputably at issue).

Facebook's theory that Plaintiffs must *disprove* the applicability of Facebook's federal defenses also flies in the face of how Texas courts distinguish between elements of a plaintiff's case versus a defendant's affirmative defenses. When there is doubt about whether an element is part of plaintiff's case, Texas courts look to "[c]onsiderations of fairness and convenience, [and] of the ease or difficulty of making proof" to resolve the doubt. *Greathouse v. Charter Nat'l Bank-Sw.*, 851 S.W.2d 173, 175-76 (Tex. 1992). All of those factors cut against requiring an HB 20 plaintiff to disprove the applicability of federal defenses as part of his *prima facie* case. There is nothing fair, for example, about forcing an ordinary consumer to disprove that the world's largest social media companies

---

[3] Facebook stumbles again when it attempts to identify federal law that gives it authority to censor. Facebook claims that 47 U.S.C. § 230 gives Facebook authority to censor content it deems "objectionable." Notice of Removal ¶ 10. But Section 230 does not, as Facebook would have it, provide a "freestanding right to censor." *NetChoice*, 49 F.4th at 468. "Instead, it clarifies that" *if* a platform censors some user content, the platform does not thereby lose statutory protection from, *e.g.*, defamation liability for user content they do *not* censor. *Id.* In any event, this is a merits argument that has no bearing on the Court's jurisdictional inquiry.

had a federal justification for removing the user's content. And the availability of proof will always be in the social media company's hands—they, after all, are the party performing the censorship.

### B.    The amount in controversy requirement is likely not satisfied for diversity or CAFA jurisdiction.

Facebook's fallback theories of federal jurisdiction—diversity and CAFA—also likely fail because the required amount in controversy is likely not met. 28 U.S.C. § 1332(a), (d). The State does not take a definitive position on this issue because it is at least possible that fact-specific components of Plaintiffs' suit might satisfy the amount in controversy requirements. But the State notes that HB 20 does not provide damages. HB 20 suits also will frequently not result in attorney's fees above the required amount in controversy because HB 20 independently requires covered platforms to maintain a process where they tell users *why* they were censored. Tex. Bus. & Com. Code § 120.104. Explanations to the user should facilitate fast resolution of HB 20 claims because the litigable issue will be reduced to whether the explanation is pretextual. (It is not clear whether that process was used here.) And Facebook's other theories why the amount in controversy requirement is met—such as that Facebook may be sanctioned in monetary amounts if they violate a Court order, Notice of Removal ¶¶ 27, 40—are highly speculative. *See Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (5th Cir. 1994) ("The *possibility* that plaintiff may in the future seek or recover more damages is insufficient to support federal jurisdiction now." (emphasis added)); *Scarlott v. Nissan N. Am.*, 771 F.3d 883, 890 (5th Cir. 2014) ("speculative" future monetary consequences are not sufficient).

## II.    Enforcement of Facebook's Forum Selection Clause Would be Unreasonable Here.

The Court should also deny Facebook's motion to transfer.

Courts do not enforce forum selection clauses when the result would be "unreasonable." *M/S Bremen*, 407 U.S. at 10. Unreasonableness is present here both because enforcement "would contravene a strong public policy of the forum state" (here, Texas) and "for all practical purposes" would deprive Plaintiffs their "day in court." *Barnett v DynCorp Int'l*, 831 F.3d 296, 301 (5th Cir. 2016); *see also In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 231-32 (Tex. 2008) (per curiam) (orig. proceeding) (materially similar).

### A. Enforcement of the forum selection clause would be unreasonable because it conflicts with conflicts with HB 20's codification of strong public policy.

Transfer would contravene a strong public policy as expressed in HB 20 itself. *See, e.g.*, *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) ("*Bremen* teaches that a strong public policy may be 'declared by statute.'"). HB 20's drafters recognized that the big social media companies use their Terms of Service to dictate how litigation with their users must unfold.[4] But HB 20 provided that these contractual stipulations are "void as unlawful and against public policy." Tex. Civ. Prac. & Rem. Code § 143A.003(a). This is a "public-policy limitation on contractual and other waivers of the highest importance and interest to this state." *Id.* § 143A.003(b). And courts routinely refuse to enforce forum selection clauses in similar settings. *See, e.g.*, *DePuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*, 28 F.4th 956, 958-59 (9th Cir. 2022) (California's statutorily expressed public policy foreclosed forum selection clause enforcement in employment dispute); *Lakeside Surfaces, Inc. v. Cambria Co.*, 16 F.4th 209, 220-21 (6th Cir. 2021) (similar); *Davis v. Oasis Legal Fin. Operating Co.*, 936 F.3d 1174, 1179 (11th Cir. 2019) (similar).

---

[4] YouTube and Twitter use very similar forum selection clauses, designating California, in their Terms of Service. The upshot of Facebook's transfer argument, then, is that likely *every* private HB 20 suit is justiciable in California only. That alone would be unreasonable.

Facebook's response (Mot. to Transfer at 9) is that HB 20 precludes waiver of only its "***substantive*** protections." It is not clear what Facebook means to argue here because HB 20 does not contain Facebook's bolded qualifier at all. Tex. Civ. Prac. & Rem. Code § 143A.003(a). Instead, HB 20 provides broadly that "contract or choice-of-law provision[s]" are altogether void as against public policy if they limit a plaintiff's HB 20 rights—not that only "substantive" limitations are void. Facebook appears to equate "substantive" protections with the *law* that will be applied, which Facebook juxtaposes (at 9) against provisions regarding "***which courts*** are competent to apply" that law. At its core, this argument is essentially just that "choice-of-law"—and not "choice of forum"—clauses are invalid. But that fails because HB 20 textually prohibits choice of law *and* other "contract" waivers, and Facebook's theory would render the prohibition on "contract" waivers superfluous. Tex. Civ. Prac. & Rem. Code § 143A.003(a). So too, HB 20 provides that its public policy limitation is meant to be enforced "to the fullest extent permitted by the United States Constitution and Texas constitution." *Id.* § 143A.003(b). The Attorney General submits that this is plainly designed to sweep in forum selection clauses. In addition, to the Attorney General's best knowledge, this is the most emphatic public policy limitation on contractual waivers in the entire Texas code.

It also does not help Facebook that HB 20 allows "arbitrat[ion]." Tex. Civ. Prac. & Rem. Code § 143A.003(a). Facebook correctly infers (at 9) from this allowance that it would be wrong to say "that only a Texas court will suffice." But Facebook's unstated conclusion—that a *California* court would suffice—does not follow. Texas treats arbitration materially different from adjudication in foreign courts. Texas law expressly provides that, generally, "[a] written agreement to arbitrate is valid and enforceable." Tex. Civ. Prac & Rem. Code § 171.001(a). HB 20's allowance

for arbitration is just an extension of that general rule. But there is no such general codification favoring transfer to an out-of-state court, and HB 20 plainly does not provide one.

## B. Transfer to California would be unreasonable because it may have the effect of denying Plaintiffs their day in court.

There is also a very strong chance that enforcing Facebook's forum selection clause would deny Plaintiffs their "day in court." *Barnett*, 831 F.3d at 301. As noted, HB 20 was enacted to protect disfavored viewpoints. But California has recently enacted multiple pieces of high-profile legislation that penalize disfavored viewpoints. And California courts may honor that legislation by using it as a basis to deny enforcement of their sister-State's law, as they are constitutionally permitted to do. *See, e.g.*, *Franchise Tax Bd. of Cal. v. Hyatt*, 538 U.S. 488, 496 (2003); *Bradford Elec.*, 286 U.S. at 160.

For example, California's recently enacted AB 587 requires social media companies, including Facebook, to issue reports to the State on various forms of content on their platform, including so-called "hate speech" and "misinformation." Cal. Bus. & Prof. Code § 22677(a)(3). Although AB 587 does not *forbid* this content, it is plain that eliminating this content is California's ultimate end. One of the bill's coauthors basically admitted this. *See* Press Release, East Cnty. Today (Jun. 22, 2022), https://perma.cc/8AV8-XARR (Senator Scott Wiener discussing the bill: "We need to hold social media companies accountable for the spread of" disfavored speech). And while it is rare that individual legislator comments are probative, California's legislative reports echo this same point and, among other things, discuss how to "create an incentive for social media companies to modify their algorithms and practices related to" the presence of this disfavored speech. Senate Judiciary Comm., Bill Analysis, Cal. AB 587 at 11, 2021-22 Reg. Sess. (June 25, 2022). It is easy to envision how this incentive structure will play out. The social media companies, including

Facebook, have represented to the Fifth Circuit that advertisers sometimes boycott the companies' platforms for hosting too much hate speech or misinformation. *See* Appellees' Br., *NetChoice v. Paxton*, 49 F.4th 439 (2022) (No. 21-51178), 2022 WL 1046833 at *8 ("advertisers have sought to hold platforms accountable-including through boycotts" for failing to remove so-called "harmful content"). By forcing platforms like Facebook to characterize and enumerate the amount of content on their platforms that fits into these disparaging buckets, California's law will presumably result in even greater boycotts if the platforms do not remove the content.

In addition, California's recently enacted AB 2098 defines "misinformation" to refer to COVID-19 medical advice "that is contradicted by contemporary scientific consensus contrary to the standard of care." Cal. Bus. & Prof. Code § 2270(b). California considers the provision of this "misinformation" to be "unprofessional conduct," *id.* § 2270(a), and instructs its Medical Board to "take action against any [medical] licensee who is charged with unprofessional conduct." *Id.* § 2234. Granted, there are obvious doubts whether AB 2098 is constitutional. *See, e.g.*, *Bd. of Regents v. Southworth*, 529 U.S. 217, 235 (2000) (under the First Amendment, "minority views are treated with the same respect as are majority views"). But a district court recently upheld AB 2098 as a valid regulation not of speech, but of "professional conduct." *McDonald v. Lawson*, 2022 WL 18145254, at *11 (C.D. Cal. Dec. 28, 2022).

There is no doubt that California's laws are at complete loggerheads with HB 20. Whereas AB 587 is designed to scrutinize, and ultimately eliminate, certain viewpoints, HB 20 is plainly designed to protect all viewpoints equally. And whereas AB 2098 is designed to punish speech that dissents from prevailing scientific orthodoxy, HB 20 is designed to ensure the survival of such speech. Even lay observers appreciate the steep tension between the paths California and Texas

are taking on free speech. *See, e.g.*, Steven Lee Myers, *Is Spreading Medical Misinformation a Doctor's Free Speech Right?* N.Y. Times (Nov. 30, 2022) (discussing California's AB 2098, and recognizing that "Texas," through HB 20, "ha[s] gone in the opposite direction"). In addition, California courts apparently take the view that speech uttered *in Texas* can serve as the basis of punishment doled out *in California*. *Hughes v. Bd. of Architectural Exam'rs*, 17 Cal. 4th 763, 792 (1998) ("[T]he statutory provisions affording a basis for denial of a license . . . apply whether the conduct occurred in this state or in another jurisdiction."). As noted *supra*, California courts are constitutionally empowered to deny enforcement of sister-State law. And the likelihood that they would do so with HB 20 is unacceptably high to justify transfer.

## Conclusion

The Court likely lacks subject-matter jurisdiction over this case and should deny Facebook's motion to transfer.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

\* Application for admission forthcoming

Judd E. Stone II
Solicitor General

/s/ Michael R. Abrams
Ryan S. Baasch\*
Michael R. Abrams
State Bar No. 24087072
michael.abrams@oag.texas.gov
Assistant Solicitors General

Counsel for the State of Texas

## Certificate of Service

I hereby certify that on January 17, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.

/s/ Michael R. Abrams
Michael R. Abrams